Case 4:15-cv-02304 Document 27 Filed in TXSD on 01/17/17 Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 17, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MORLOCK, L.L.C., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-15-2304 |
| § | |
| HSBC BANK USA, N.A., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant's Motion for Summary Judgment (Doc. 23). The court has considered the motion, Plaintiff's response (Doc. 25), Defendant's reply (Doc. 26), and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

### I. Case Background

In April 2005, George G. George ("George") executed an Adjustable Rate Note (the "Note") to purchase the property located at 17606 Meadow Crossing Lane, Houston, Texas 77095 (the "Property") with a loan from People's Choice Home Loan, Inc. ("People's Choice") in the amount of $142,332.00.[2] The Note was secured by a deed of trust ("the Deed of Trust") granting a

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 6, Ord. Dated Aug. 27, 2015.

[2] See Doc. 23-1, Ex. A-1 to Def.'s Mot. for Summ. J., Adjustable Rate Note pp. 8-12.

security interest in the form of a lien on the Property to People's Choice.[3]  The Note and the Deed of Trust were assigned to Defendant.[4]

George first defaulted on the Note by failing to make timely payments beginning in late 2007 or early 2008.[5]  Defendant scheduled five trustee's sales between March and December 2009 but did not foreclose on the Property.[6]  George failed to make timely payments for years, with payments stopping altogether in April 2011.[7]  In March 2012, George and Defendant's loan servicer, Ocwen Loan Servicing, LLC, ("Ocwen") modified George's loan agreement, with George making payments applied on May 1, 2012, May 30, 2012, and July 2, 2012.[8]  However, George ceased making payments beginning with the payment due on August 1, 2012.[9]

---

[3] See Doc. 23-1, Ex. A-2 to Def.'s Mot. for Summ. J., Deed of Trust pp. 14-40.

[4] See Doc 23-1, Ex. A-3 to Def.'s Mot. for Summ. J., Assignment of Lien pp. 42-43; Doc. 23-A, Ex. A-3 to Def.'s Mot. for Summ. J., Assignment of Note and Deed of Trust pp. 44-46.

[5] See Doc. 23-1, Ex. A to Def.'s Mot. for Summ. J., Aff. of Sean Flannery ¶ 6 ("Borrower defaulted on the Note by failing to make his payments when due as far back as 2008"); Doc. 23-1, Ex. A-7 to Def.'s Mot. for Summ. J., Loan Payment History p. 1 (showing late charges assessed against George as early as May 2007).

[6] See Doc. 11-1, Ex. A to Pl.'s 1st Am. Compl., Notices of Substitute Trustee Sales, pp. 1-5.

[7] See Doc. 23-1, Ex. A to Def.'s Mot. for Summ. J., Aff. of Sean Flannery ¶ 6.

[8] See id.; Doc. 23-1, Ex. A-7 to Def.'s Mot. for Summ. J., Detail Transaction Hist. pp. 79-80; Doc. 23-1, Ex. A-8 to Def.'s Mot. for Summ. J., Loan Modification Agreement pp. 82-85.

[9] See Doc. 23-1, Ex. A to Def.'s Mot. for Summ. J., Aff. of Sean Flannery ¶ 7.

Ocwen sent George a notice of default and intent to accelerate on September 15, 2012.[10]  On November 29, 2012, because George continued to fail to make payments on the mortgage, Ocwen subsequently sent George a notice of acceleration and notice of sale to take place on January 1, 2013.[11]  On July 10, 2015, a notice of rescission of acceleration was mailed to George from counsel for Defendant and Ocwen, rescinding the 2012 acceleration on the Note.[12]

On December 6, 2011, Plaintiff purchased the Property at a foreclosure sale conducted by George's Homeowner's Association ("HOA"), as evidenced by a trustee's deed executed by George's HOA on January 18, 2012.[13]  The trustee's deed stated that the Property was conveyed subject to any existing liens.[14]  Plaintiff rented out the Property to tenants, with the lease commencing on December 10, 2012.[15]

## B.  **Procedural History**

In December 2012, Plaintiff filed suit against Defendant in

---

[10]    See id. ¶ 8; Doc. 23-1, Ex. A-4 to Def.'s Mot. for Summ. J., Notice of Default & Intent to Accelerate pp. 52-58.

[11]    See Doc. 23-1, Ex. A-5 to Def.'s Mot. for Summ. J, Notice of Acceleration pp. 60-65.

[12]    See Doc. 23-1, Ex. A-6 to Def.'s Mot. for Summ. J., Notice of Rescission of Acceleration of Loan Maturity pp. 67-68.

[13]    See Doc. 23-2, Ex. B-1 to Def.'s Mot. for Summ. J., Trustee's Deed pp. 5-8.

[14]    See id. p. 6 ("This conveyance is expressly made and accepted subject to . . . all valid . . . liens").

[15]    See Doc. 23-2, Ex. B-3 to Def.'s Mot. for Summ. J., Residential Lease pp. 42-58.

the 295th District Court of Harris County, Texas, seeking a temporary restraining order to prevent a sale of the Property and a determination of Defendant's assignment of the lien and interest in the Property.[16] The case was subsequently removed to this court and Plaintiff's claims were dismissed on July 23, 2014, for failure to state a claim.[17]

Plaintiff filed a second suit against Defendant in the 133rd District Court of Harris County, Texas, on July 6, 2015.[18] In its petition, Plaintiff requested a temporary restraining order preventing any action by Defendant and claimed that Defendant's right to enforce the lien was barred by Section 16.035 of the Texas Civil Practice and Remedies Code.[19]

Defendant removed this case based on diversity jurisdiction on August 11, 2015.[20] On August 18, 2015, Defendant filed a motion to dismiss, which the court denied on October 21, 2015.[21] Defendant subsequently filed the pending motion for summary judgment.[22] The court now considers the pending motion along with Plaintiff's

---

[16] See Doc. 23-2, Ex. B-5 to Def.'s Mot. for Summ. J, Ord. p. 64.

[17] See id. pp. 63-72.

[18] See Doc. 1-1, Ex. B-1 to Def.'s Notice of Removal, Pl.'s Original Pet. & Application for a Restraining Order pp. 5-8.

[19] See id.

[20] See Doc. 1, Def.'s Notice of Removal.

[21] See Doc. 15, M. & R.; Doc. 17, Ord. Adopting M. & R.

[22] See Doc. 23, Def.'s Mot. for Summ. J.

4

response and Defendant's reply.[23]

## II. Legal Standards

**A. <u>Summary Judgment Standard</u>**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record

---

[23]    <u>See</u> Doc. 25, Pl.'s Response; Doc. 26, Def.'s Reply.

evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant

fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

## B. Foreclosure and Abandonment of Acceleration

Texas law creates a four-year statute of limitations for a foreclosure sale of real property under a deed of trust. Tex. Civ. Prac. & Rem. Code § 16.035(b). Once this four-year period expires, "the real property lien and a power of sale to enforce the real property lien become void." Tex. Civ. Prac. & Rem. Code § 16.035(d). "If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate." Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). The following two elements are required for a valid acceleration: (1) notice of intent to accelerate, and (2) notice of acceleration. Id.

Abandonment of acceleration can be shown by agreement of the parties or other actions. Khan v. GBAK Props., Inc., 371 S.W.3d 347, 356 (Tex. App-Houston [1st Dist.] 2012, no pet.)("It has been the law of Texas at least since 1901 that the parties can abandon acceleration and restore the contract to its original terms by the parties' agreement or actions."). Acceleration of a debt may be

abandoned by the holder of the note "if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." Holy Cross, 44 S.W.3d at 566-67 (citations omitted). If acceleration is abandoned, a holder of a note may accelerate the note at a later date because the original maturity date is restored. Id. at 567 (citing Denbina v. City of Hurst, 516 S.W.2d 460, 463 (Tex. Civ. App.–Tyler 1974, no writ)).

### III.  Analysis

#### A.  Abandonment of Acceleration

In its motion for summary judgment, Defendant argues that Plaintiff's claims that the lien is void fail because any acceleration on the Note was abandoned within the four-year limitation period. Plaintiff maintains that there was a failure to foreclose within the applicable four-year statute of limitations, making the lien void and unenforceable. Plaintiff alternatively argues that Defendant and George should have signed a written extension agreement if they wanted to extend the statute of limitations applicable to acceleration.

The Deed of Trust in this case provides for an optional acceleration if the borrower is in default.[24] The summary judgment evidence shows that George was in default in 2007 and 2008.

---

[24] See Doc. 23-1, Ex. A-2 to Def.'s Mot. for Summ. J., Deed of Trust p. 26 ("If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by the Applicable Law.").

8

Plaintiff's evidence of the five notices of sale from ranging from March 2009 to December 2009 does not show exactly when the Note was accelerated, but the court agrees that a foreclosure sale is effective only if the defaulting party was sent an intent to accelerate and a notice of acceleration. See Holy Cross, 44 S.W.3d at 566.

Assuming, then, that Defendant accelerated the Note some time in late 2008 or early 2009 at the earliest in an attempt to effectuate these foreclosure sales, Defendant later abandoned those acceleration notices by continuing to accept payments from George after these notices of sale from 2011 through mid-2012 and by modifying the loan agreement in March 2012. See Holy Cross, 44 S.W.3d at 566-67. The loan modification and Defendant's acceptance of several payments made pursuant to that loan modification evidenced an abandonment of the acceleration. As there is no competent summary judgment evidence that the loan was first accelerated more than four years before the March 2012 loan modification, Plaintiff's claim fails.

Plaintiff challenges the enforceability of the March 2012 loan modification agreement on the basis that it was only signed by George, not by Defendant. However, the loan modification agreement did not explicitly require Defendant's signature to be enforceable as it was an offer by Defendant and was only contingent on

9

Plaintiff's signature.[25]  Defendant initiated the loan modification terms and paperwork and accepted the contract by taking George's payments at the new, agreed-upon amount.  In Texas, a party may be bound to a contract absent signatures if it was their intent to be bound.  See Simmons v. Simmons Constr. Co. v. Rea, 286 S.W.2d 415, 418 (Tex. 1955).  Neither party to the loan modification contract contests its enforceability.

Although Plaintiff argues that this loan modification does not comport with the statute of frauds because it was not signed by the lender, only the party to be charged with the agreement is required to sign.  See Tex. Bus. & Com. Code § 26.02(b)("A loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative.").  The loan modification contract was complete upon George's signature and satisfied the Statute of Frauds.

Defendant later accelerated the Note in November 2012, after sending George a notice of default and intent to accelerate in September 2012.  Four days after Plaintiff filed suit in state court, Defendant sent a notice of rescission of acceleration to George.  Although the Texas Supreme Court has not directly held that the unilateral action of a lender sending a notice of

---

[25] The Loan Modification Agreement states, "Ocwen Loan Servicing, LLC ("Ocwen") is offering you this Loan Modification Agreement ("Agreement")."  The Agreement recited a number of new terms to which George had to agree but contained none affecting Ocwen's original obligations under the Note.

rescission demonstrates valid abandonment of acceleration, Callan v. Deutsche Bank Trust Co. Americas, 93 F. Supp.3d 725, 734 (S.D. Tex. 2015)(explaining how Texas courts have not explicitly addressed this issue),[26] the Fifth Circuit and several federal district courts applying Texas law have found these notices of rescission to be a valid expression of abandonment of acceleration. See Leonard v. Ocwen Loan Servicing, LLC, 616 Fed. App'x. 677, 679 (5th Cir. 2015)(unpublished)(where the Fifth Circuit upheld the district court's conclusion that a lender may unilaterally rescind an acceleration under Texas law); Murphy v. HSBC Bank USA, 95 F. Supp.3d 1025, 1039 (S.D. Tex. 2015)("[t]here is authority clearly establishing that the lender's or loan servicer's action constituting abandonment of acceleration can be unilateral"); see also Callan, 93 F. Supp. 3d at 737-38; DTND Sierra Investments, LLC v. Bank of New York Mellon Trust Co., 958 F. Supp.2d 738, 749-50 (W.D. Tex. 2013); Clawson v. GMAC Mortg., LLC, No. 3:12-CV-00212, 2013 WL 1948128, at *4 (W.D. Tex. May 9, 2013)(unpublished)(citing Holy Cross and holding that recent cases demonstrate that a note holder may abandon acceleration "without express agreement from the borrower.").

In this case, Defendant unilaterally rescinded its earlier acceleration via a notice of rescission mailed to George. There is

---

[26] In Callan, the court held that the unilateral rescission by the lender was proper, citing that the borrower did not object to the notice of rescission and did not detrimentally rely on the acceleration of the loan. 93 F. Supp.3d at 737-38.

no evidence that George has objected to this notice of rescission or detrimentally relied on the acceleration of the loan. This 2015 notice of rescission of acceleration was effectuated well within the four-year statute of limitations. Therefore, the court finds that the notice of rescission of acceleration properly rescinded Defendant's November 2012 acceleration on the Note. Therefore, contrary to Plaintiff's argument, Defendant did not have to file a written extension because it acted to abandon the acceleration within the four-year statute of limitations.

**B. <u>Declaration of Amount Owed on Debt</u>**

Defendant challenges Plaintiff's claim seeking a declaration on the debt, arguing that the evidence shows that Defendant owns the Note and is the current beneficiary on the Deed of Trust, so Defendant asks the court to enter judgment in its favor declaring that Defendant is owed a debt of $115,514.92 "plus all contractual amounts accrued between June 9, 2016 and the date of judgment" and allow it to proceed with the foreclosure.[27]

Because the court has found that Defendant abandoned both instances of acceleration, the court finds no reason to invalidate Defendant's lien on the Property. The summary judgment evidence demonstrates that Defendant is the current holder of the Note and mortgagee of the Deed of Trust. Although Plaintiff purchased the

---

[27] Doc. 23, Def.'s Mot. for Summ. J. p. 12; Doc. 23-3, Ex. B-5 to Def.'s Mot. for Summ. J., Proposed Ord. Granting Def.'s Mot. for Summ. J. p. 2.

Property at a foreclosure sale in December 2011, the trustee's deed stated that Plaintiff purchased the Property subject to any existing liens. Defendant's lien was in place prior to Plaintiff purchasing the Property at the foreclosure sale, making Plaintiff's interest in the Property subject to Defendant's lien. Plaintiff has not provided any evidence that the Note and Deed of Trust were invalid or not held by Defendant. Therefore, the court finds that the debt is properly owed to Defendant by George and Defendant may foreclose on the Property.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 17th day of January, 2017.

U.S. MAGISTRATE JUDGE